UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRENDA CARROLL,            )     CASE NO.:   1:09CV2910
                         )
        Plaintiff,          )
                         )     MAGISTRATE JUDGE
                         )     GEORGE J. LIMBERT
      v.                 )
                         )
MICHAEL J. ASTRUE,      )     **MEMORANDUM OPINION & ORDER**
Commissioner of Social Security, )
                         )
        Defendant.      )
                         )

Brenda Carroll ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income benefits ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision:

## I.      PROCEDURAL HISTORY

On December 27, 2005, Plaintiff filed an application for SSI alleging disability beginning March 1, 2004 due to arthritis, osteoporosis, anxiety, and reading and learning disabilities. Tr. at 48, 68-72, 99. The SSA denied Plaintiff's claims initially and on reconsideration. *Id*. at 42-44, 48-50. Plaintiff filed a request for hearing before an administrative law judge ("ALJ") and on August 12, 2008, an ALJ conducted a hearing via videoconference where he received testimony from Plaintiff and Robert Edwards, a vocational expert. Tr. at 26, 353. Plaintiff was represented by counsel. *Id*.

On September 25, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under the Social Security Act. Tr. at 11-23. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied her request for review. *Id*. at 5-7. On December 16, 2009, Plaintiff filed the instant suit. ECF Dkt. #1. On December 15, 2010, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #23.

On July 16, 2010, Plaintiff filed a brief on the merits and on November 5, 2010, Defendant filed a brief on the merits. ECF Dkt. #s 13, 19. On December 6, 2010, Plaintiff filed a reply brief.

ECF Dkt. #21.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from cervical degenerative disc disease ("DDD") at C5-5, chronic obstructive pulmonary disease ("COPD"), depression, anxiety, and borderline intellectual functioning ("BIF"), which qualified as severe impairments under 20 C.F.R. §416.920(c). Tr. at 13.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*. at 14.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work, with Plaintiff able to occasionally lift and carry no more than ten pounds at a time; sit up to six hours per eight-hour workday; stand and/or walk no more than two hours of an eight-hour workday; the ability to change positions for sitting to standing as needed; no overhead reaching; no exposure to extreme temperatures; only occasional bending and squatting; and no climbing.  Tr. at 15-16.  The ALJ further limited Plaintiff to simple, routine, repetitive tasks in a low-stress environment.  *Id*. at 16.  The ALJ determined that Plaintiff could not perform her past relevant work as a general laborer as it was at the medium exertional level of work.  *Id*. at 22.

Based on the record and the vocational expert's testimony, however, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as an information clerk, a gate guard, or a hand packer. Tr. at 22.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made

-2-

without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & uman Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

### A.     STEP TWO DETERMINATION

Buried in the credibility section of Plaintiff's brief on the merits is an assertion that the ALJ

erred by not including Plaintiff's lumbar pain in his Step Two list of severe impairments.  ECF Dkt. #13 at 17.  Plaintiff contends that the ALJ "failed to include it at all in his decision."  *Id*. at 18.  The Court will begin with this assertion first since it makes most chronological sense to do so.

The ALJ did not find that Plaintiff's lumbar pain was a severe impairment at Step Two of the sequential evaluation.  Tr. at 13.  However, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.' " *Fisk*, 253 Fed. App'x at 583, quoting *Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir.1987).  Further, when an ALJ finds that one or more impairments of a claimant are severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " *Fisk v. Astrue*, 253 Fed. App'x 580, 583, 2007 WL 3325869, at **4 (6th Cir. Nov. 9, 2007), unpublished, quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5.

While he did not find Plaintiff's lumbar pain to be a severe impairment, the ALJ clearly went on in the rest of his analysis to consider her back pain and limit her RFC accordingly.  In fact, he noted that Plaintiff testified that she had degenerative disc disease of her lower back.  Tr. at 16.  He thereafter reviewed the objective medical evidence regarding the impairments that he deemed severe, and her other impairments, including her back pain.  He noted that Plaintiff's bone scans showed osteopenia of the hips and lower back.  *Id*. at 18.  He reviewed Dr. Namey's treatment notes citing Plaintiff's reports of back pain and the medications that he prescribed for her back pain.  *Id*. at 16-20.  The ALJ also cited to normal lumbar x-rays and a MRI.  *Id*. at 18.  He also noted Dr. Bhaiji's diagnosis of lumbar back pain, and questioned Dr. Namey's diagnosis of lumbar degenerative joint disease without findings confirming such a diagnosis.  *Id*. at 16-20.  The ALJ also found some merit to Plaintiff's complaints of pain and he limited her to sedentary work with standing and/or walking for up to two hours per eight-hour workday with the ability to change positions from sitting to standing when needed.  *Id.* at 15.  He also limited Plaintiff to occasional bending and squatting and no climbing.  *Id.*

Accordingly, the ALJ's failure to find Plaintiff's back pain as a severe impairment at Step Two is harmless error because he went on to consider her back pain in the rest of his analysis and

-4-

he limited Plaintiff's RFC in part based upon her back pain.

**B.      TREATING PHYSICIAN RULE**

_____Plaintiff asserts that the ALJ failed to provide good reasons for attributing only minimal weight to the opinions of her treating physician, Dr. Namey.  ECF Dkt. #13 at 10-14.  She asserts that the ALJ substituted his own lay opinion for that of Dr. Namey and misevaluated the evidence supporting Dr. Namey's opinions  *Id.*

On April 19, 2007, the Ashtabula County Department of Human Services received a basic medical statement from Dr. Namey in which he listed Plaintiff's medical conditions as including anxiety, degenerative joint disease ("DJD"), and gastritis.  Tr. at 320.  He concluded that Plaintiff could: sit one hour per eight-hour day for thirty minutes without interruption; stand/walk one hour per eight-hour day; and frequently and occasionally lift and carry objects weighing up to six to ten pounds.  *Id*. at 321.  He indicated that Plaintiff was moderately limited in pushing/pulling, bending, reaching and handling and had no limitations in repetitive foot movements, seeing, hearing or speaking.  *Id.*  Dr. Namey noted that Plaintiff had decreased range of motion in her back and stated "hx & physical exam...x-rays" when requested to detail the observations and medical evidence that led to his limitations.  *Id.*  He also stated that Plaintiff was unemployable.  *Id.*

On June 5, 2008, Dr. Namey completed a medical statement of Plaintiff's physical limitations and mental abilities in which he opined that from March 1, 2004 to the present, Plaintiff could:  stand for thirty minutes at a time; sit for fifteen minutes at a time; work one to two hours per day; lift five pounds occasionally and no weight frequently; occasionally bend, stoop, raise her left and right arms over shoulder level; and frequently perform right and left hand manipulations.  Tr. at 341.  He further opined that Plaintiff needed to frequently elevate her legs above her waist in an eight-hour workday.  *Id*.  Dr. Namey also found that Plaintiff was markedly impaired in understanding, remembering and executing detailed instructions and in maintaining attention and concentration.  *Id.*  He checked markedly impaired in assessing the degree to which Plaintiff suffered from depression, anxiety and/or panic disorder.  *Id.*  Dr. Namey opined that Plaintiff would be absent from work more than three times per month due to her impairments.  *Id.*  He listed her diagnoses as depression, anxiety, osteoporosis, cervical, dorsal and lumbar DDD, and COPD.  *Id.*

In an accompanying pain questionnaire, Dr. Namey indicated Plaintiff's impairments as depression, anxiety, cervical, dorsal and lumbar DJD, osteoporosis, COPD, and insomnia.  Tr. at 342.  He concluded that a direct correlation existed between Plaintiff's symptoms and impairments mentally and physically.  *Id.*  He also indicated that an x-ray of Plaintiff's thoracic spine showed DJD and a cervical MRI showed degenerative disease at C5-6 and narrowing at another cervical disc location.  *Id*.

Plaintiff cites to statements made by the ALJ as evidence that he substituted his own lay opinion for that of the expert medical evidence.  ECF Dkt. #13 at 12.  Plaintiff refers to the ALJ's statement in his decision that "[i]t is interesting that Dr. Namey diagnosed the claimant with lumbar disc disease despite normal lumbar radiographic and MRI findings, which does not make logical sense."  *Id*., quoting  Tr. at 18.  Plaintiff also cites to the ALJ's finding that "Dr. Namey diagnosed the claimant with lumbar DJD, but the radiographic and MRI findings do not substantiate this diagnosis."  ECF Dkt. #13 at 12, quoting Tr. at 19.  Plaintiff concludes that "[i]nstead of using the evidence and opinion of a qualified physician to guide his decision, the ALJ actually declared, in essence, that he was more qualified to diagnose Carroll's medical conditions.  Clearly, the ALJ could not possibly respect and evaluate Dr. Namey's opinion properly if he considered himself to have a better grasp on medicine than the physician."  ECF Dkt. #13 at 12.  Plaintiff also cites to the ALJ's statement that "it would seem logical" that because Plaintiff saw Dr. Namey nearly every month, she would have reported all of her complaints to him and he would have documented objective findings as to each of her complaints when they were reported.  ECF Dkt. #13 at 11, citing Tr. at 20.  Plaintiff further refers to the ALJ's finding that Dr. Namey prescribed Vicodin for Plaintiff's back pain, but provided no objective findings on examination before prescribing the medication.  *Id*.

The Court agrees that some of the above-cited statements made by the ALJ in the instant case are questionable.  An ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart,* 192 Fed.Appx. 456, 465 (6th Cir. Aug. 8, 2006), unpublished; *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th  Cir.1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").  The Court cannot excuse the denial of a

-6-

mandatory procedural protection such as the good reasons requirement because sufficient evidence in the record supports the ALJ's discounting of the treating source's opinion and a different outcome on remand is thus unlikely.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004)(citations omitted).  However, the Sixth Circuit in *Wilson* left open the possibility that a violation of the procedural requirement of the agency could constitute harmless error in some cases. *Id.* at 547.

The Court finds that Plaintiff exaggerates the impact of these statements in concluding that by making such statements, the ALJ declared that he was more qualified to diagnose Plaintiff and he could not possibly respect and evaluate Dr. Namey's opinions in a proper manner. ECF Dkt. #13 at 12.  The ALJ did not expressly or impliedly declare that he was more qualified than Dr. Namey and the ALJ goes on in his decision to thoroughly review the medical evidence and Dr. Namey's assessments and treatment notes.  He thereafter articulates good reasons for not affording controlling weight to Dr. Namey's opinions and for assigning them minimal weight.  Tr. at 17-21.  Thus, any error that the ALJ made with respect to the cited statements was harmless as he nevertheless properly considered Dr. Namey's opinions, discounted them with valid and articulated reasons, and had substantial evidence with which to assign them minimal weight.  *See Prunest v. Astrue*, 2009 WL 2393111, at *9 (S.D. Ohio July 29, 2009)(acknowledging the possibility that error by ALJ in substituting his lay opinion for that of treating physician could be considered harmless, but remanding case because treating physician provided detailed explanations and references to objective medical evidence).

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  In other words, an ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985), and substantial evidence does not contradict it, *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d

922, 927 (6th Cir.1987). If the ALJ finds the treating physician's opinion fails to meet these two conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2) (i), (d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

The ALJ reviewed Dr. Namey's treatment notes and the RFC assessments that he provided on April 19, 2007 and June 5, 2008 and set forth specific reasons for attributing less than controlling weight to the opinions of Dr. Namey.  He also supplied the findings required under 20 C.F.R. § 416.927(d)(2) to explain his decision to attribute minimal weight to those opinions.  The ALJ noted

objective medical evidence which was inconsistent with Dr. Namey's diagnosis of DJD of Plaintiff's spine, including lumbar x-rays from 2006 showing no fracture, normal alignment, normal vertebral height, and well-maintained disc spaces. *Id.* at 18, 237. The ALJ noted a normal MRI of Plaintiff's lumbar spine, showing no disc herniation or nerve root impingement. *Id*. at 18, 233. He cited to Dr. Namey's April 2005 note that a bone scan of Plaintiff's back revealed no evidence of fracture or dislocation, but did show some evidence of osteopenia. Tr. at 17. The ALJ also noted a cervical MRI showing normal findings at C2-C5, but mild diffuse disc bulge at C5-6 with no foraminal or canal stenosis and mild bilteral facet hypertrophy with no forminal or canal stenosis at C6-7. *Id*. He cited to a right shoulder MRI which was negative and showed normal muscle bulk and signal intensity. *Id*. He also noted findings of a full range of motion found by Dr. Popovic with regard to Plaintiff's right shoulder and a diagnosis of non-specific right shoulder pain with no focal etiology, but possible low-grade bursitis. *Id*. The ALJ also noted that Dr. Namey treated Plaintiff conservatively with Lortab for pain control and eventually other pain medications in 2005. *Id.*

Plaintiff contends that the ALJ stated that she stopped reporting pain in September 2006. ECF Dkt. #13 at 12. However, the ALJ cited to Plaintiff's complaints of back pain in September 2006, along with her complaints of difficulty ambulating due to slipping and falling. Tr. at 18.

The ALJ also reviewed Dr. Namey's April 2004 through April 2007 treatment notes, which documented that Plaintiff's bone scan revealed some evidence of osteopenia of the bilateral hips and back at L2. Tr. at 18. However, the ALJ found that most of the treatment notes during this period were brief with no delineated objective findings. *Id*. Plaintiff admits that Dr. Namey's progress notes "are truly characteristically brief." ECF Dkt. #13 at 11. But Plaintiff asserts that "[t]herefore, the ALJ should not have considered it significant when he [Dr. Namey] did not extensively document every objective finding, or, much less, describe impairments he was not treating." *Id*. The Court rejects this assertion, since the ALJ may properly rely upon a treating physician's lack of objective findings in choosing to assign minimal weight to those opinions. *Wilson*, 378 F.3d at 544. Further, Dr. Namey was treating Plaintiff for the impairments that the ALJ was reviewing, namely, her neck and back pain.

The ALJ is correct that the April 2004 through April 2007 treatment notes contain no

objective findings.  Only approximately ten treatment notes of about ninety in the record for this time period contain more than a recitation that Plaintiff complained of lumbar pain and that her prescriptions were continued.  Tr. at 230-283.  The ten treatment notes do not contain much more than the others, except that Plaintiff complained of difficulty ambulating, and had palpatory pain and tenderness.  *Id*. at 230, 232, 236, 245, 247, 249, 254, 255, 259, 261.

The ALJ also reviewed the rest of Dr. Namey's treatment notes and stated that they presented no compelling findings, thus negating the extreme limitations that Dr. Namey assessed for Plaintiff's work-related abilities.  Tr. at 17-21.  He reviewed the contents of those treatment notes as well.  *Id.*

The ALJ also referred to the assessment of Dr. Bhaiji, who examined Plaintiff thoroughly, diagnosed lumbar sprain, osteoporosis, and status post shoulder injury, and opined that Plaintiff would have no difficulty with work-related physical activities such as sitting, but may have some difficulty with standing, walking, and lifting and carrying objects.  Tr. at 18-19; Tr. at 203.

For these reasons, the Court finds that the ALJ in this case properly applied the treating physician rule and complied with the regulatory factors in assigning Dr. Namey's opinions minimal weight.  Moreover, the ALJ properly assessed the medical and non-medical evidence in determining Plaintiff's RFC and the responsibility for determining a claimant's RFC rests with the ALJ, not a physician. *See* 20 C.F.R. § 416.946(c); *Ford v. Comm'r of Soc. Sec*., 114 Fed. App. 194, 197 (6th Cir. 2004).

## C.     OTHER PHYSICIANS' OPINIONS

Plaintiff additionally asserts that the ALJ failed to properly evaluate the opinions of state agency reviewing psychologists Drs. Chambly and Casterline.  ECF Dkt. #13 at 14.  She also contends that the ALJ improperly devalued the opinions of non-treating psychologists Richard Halas and Dr. Cozy.  *Id*. at 15.  Plaintiff further argues that the ALJ entirely ignored the opinions of Plaintiff's family members.  *Id.* at 15-16.  Plaintiff's assertions are not well-taken.

It is true that opinions from agency medical sources is considered opinion evidence. 20 C.F.R. § 416.927(f).  The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or

psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii).  More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009).  This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180.  Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

However, the Sixth Circuit Court of Appeals has held that the regulation requiring an ALJ to give good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, at **10 (6th Cir. Feb. 9, 2006), unpublished.  The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.*  Further, the Sixth Circuit has held that the failure of an ALJ to mention the report of a treating physician could be harmless error.  *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. App'x 463, 467 (6th Cir. 2004), citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-536 (6th Cir. 2001).  In *Dyke*s, the Sixth Circuit reasoned that "logically...if the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston*,...the ALJ's failure...to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." 112 Fed. App'x at 467.

-11-

In this case, the ALJ did not explicitly mention the opinions of Drs. Casterline or Chambly. However, the ALJ's mental RFC is consistent with their opinions as he limited Plaintiff to simple, routine and repetitive tasks, in low-stress environments.  Tr. at 15-16.

The ALJ did review the June 5, 2005 evaluation and opinions of consultative agency examiner Halas in detail and cited Halas' July 3, 2006 evaluation of Plaintiff.  Tr. at 14, 16-17, 21. However, the diagnoses and restrictions opined by Psychologist Halas are the same in both evaluations.  *Id*. at 171, 222-224.  He diagnosed generalized anxiety disorder, depressive disorder, not otherwise specified, and BIF.  *Id*. at 222-224.  Psychologist Halas opined that Plaintiff would have moderate limitations in relating to others, and in following simple instructions.  *Id*. at 225.  He further found that Plaintiff would have mild limitations in maintaining attention to perform simple, repetitive tasks, but she would have marked limitations in withstanding the stresses and pressures associated with most daily work settings.  *Id*.  He indicated that Plaintiff's anxiety and depressive symptoms would become exacerbated if she were placed in a stressful, fast-paced or demanding work setting.  *Id*.  He opined that Plaintiff's global assessment of functioning ("GAF") was 60, but then stated that her functional severity was 55 and then stated "[t]he client's overall GAF score becomes 45, as this is the lower of the two scores."  Mr. Halas must have meant the overall GAF score becomes 55, not 45, as no mention of a GAF of 45 is mentioned at all in his evaluation.

On July 5, 2006, agency reviewing consultant Dr. Casterline completed a psychiatrist review technique form and a mental RFC assessment based upon her review of the record, which included a review of Psychologist Halas' evaluation.  Tr. at 208-221, 226-229.  Dr. Casterline opined, in agreement with Mr. Halas, that Plaintiff was moderately limited in understanding and memory but could understand, remember and execute simple, one to two step directions and instructions.  *Id*. at 228.  She further opined that Plaintiff was limited in her ability to concentrate and maintain attention to simple tasks.  *Id*.  Dr. Casterline further agreed with Mr. Halas that Plaintiff was moderately limited in her socialization ability.  *Id*.  The ALJ provided a mental RFC consistent with all of these opinions by limiting Plaintiff to simple, routine and repetitive tasks with simple instructions in a low stress environment.  *Id*. at 15-16.

Dr. Casterline differed with Psychologist Halas in Plaintiff's ability to withstand the stresses

-12-

and pressures of daily work activities, finding that while Mr. Halas found Plaintiff markedly limited in this category, Plaintiff's daily activities such as caring for her four children and managing household funds independently, performing household chores and preparing meals, did not support a marked limitation.  Tr. at 228.  Dr. Casterline also found that Mr. Halas' GAF of 60 for Plaintiff, which indicated moderate limitations, did not correspond with the marked limitations that he opined. *Id*.  Dr. Casterline did, however, opine that Plaintiff's ability to withstand daily work stresses was moderately limited, and she would be able to perform simple tasks in a low- stress situation.  *Id*.  The ALJ's mental RFC for Plaintiff limiting her to simple tasks in a low-stress environment corresponded exactly with Dr. Casterline's opinion.  *Id*. at 16.

On June 22, 2005, Dr. Chambly reviewed Plaintiff's medical records, including Mr. Halas' June 2005 evaluation, and she completed a psychiatric review technique form and mental RFC.  Tr. at 176-193.  She found that Plaintiff was moderately limited in understanding, remembering and executing detailed instructions, maintaining attention and concentration, working and interacting with others, and in responding appropriately to changes in the work setting.  *Id*. at 176-177.  Dr. Chambly noted that Plaintiff had never received counseling in the past, had never been hospitalized for her mental impairments, and she had her driver's license, cared for four children and was married.  *Id*. at 178.  Dr. Chambly opined that Plaintiff could perform routine work with an expected and not rapid pace where changes would be explained.  *Id*.  Dr. Lewin affirmed Dr. Chambly's assessment on August 26, 2005 upon review of the evidence.  *Id*.  The ALJ's mental RFC for Plaintiff was consistent with this assessment as well.

Accordingly, although he did not explicitly mention the opinions of Drs. Casterline and Chambly, the ALJ apparently considered those opinions and adopted them in his mental RFC. Moreover, the ALJ did explicitly review Psychologist Halas' opinions and his mental RFC accommodated those opinions in full, except for the assessment that Plaintiff was markedly limited in withstanding the stresses and pressures of daily work activity. Tr. at 16-17.

As to Psychologist Halas' opinion that Plaintiff had a marked restriction in withstanding the stresses and pressures of work, it appears that the ALJ relied in part on Dr. Casterline's finding that Plaintiff was not markedly limited in this area based upon her level of activity and daily functioning.

-13-

Tr. at 228.  Again, the responsibility for determining a claimant's RFC rests with the ALJ, not a physician. *See* 20 C.F.R. § 416.946(c).  And an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a RFC finding. *See Ford*, 114 Fed. App'x at 197 (6ᵗʰ Cir. 2004).  The ALJ cited to Plaintiff's daily activities, which included caring for her children and her disabled husband, driving, and performing all household chores with help. *Id*. at 21.  The ALJ also noted that Plaintiff was able to pass her driver's license test and stopped working in part to care for her disabled husband. *Id*.  Substantial evidence supports the ALJ's decision to reject this part of Halas' opinion as the record supports the ALJ's determination based upon the agency reviewing psychologists' opinions and the non-medical evidence regarding Plaintiff's daily living activities.

Plaintiff also asserts that the ALJ rejected the opinions of Dr. Cozy, a non-treating psychologist employed with the Ohio Department of Jobs and Family Services, who completed a mental functional capacity assessment of Plaintiff on April 13, 2007. Tr. at 311-312.  Dr. Cozy opined that Plaintiff was extremely limited in: remembering locations and work-like procedures; maintaining concentration and attention for extended periods; working with others without being distracted by them; completing a normal workday or workweek without interruptions from her mental impairments; performing at a consistent pace without an unreasonable amount and length of breaks; interacting appropriately with the general public; accepting instruction and criticism from supervisors; and in traveling in unfamiliar places or using public transportation. *Id*. Dr. Cozy found Plaintiff markedly limited in carrying out detailed instructions and in the ability to perform activities within a schedule, maintaining regular attendance, and being punctual. *Id*.  He further opined that Plaintiff was moderately limited in understanding and remembering very short and simple, as well as detailed instructions, although he found Plaintiff not limited in carrying out very short and simple instructions. *Id*. at 311.  Dr. Cozy also found that Plaintiff was unemployable. *Id*. at 312.

The form required Dr. Cozy to explain the observations and/or medical evidence that led him to his assessment findings. Tr. at 312.  The only notations made by Dr. Cozy are the following: "*2

-14-

ITEM - It depends on what the instructions are" and "*8 ITEM - has not worked since 1966[sic][1], difficult to answer." *Id.*  Dr. Cozy provided no further explanation and cited to no objective evidence or medical evidence to support his assessment.  Without further clarification and no other assessment or evidence from Dr. Cozy in the record, the Court can only surmise that Dr. Cozy must be referring to item numbers 2 and 8 on the mental RFC assessment that he completed.  As to the number 2 item on the form, Dr. Cozy opined that Plaintiff had moderate ability to understand and remember very short and simple instructions.  *Id.* at 311-312.  The number 8 item on the form is Dr. Cozy's finding that Plaintiff was not significantly limited in sustaining an ordinary routine without supervision.  *Id*.

A decision by another governmental agency is not binding upon the ALJ.  20 C.F.R. § 416.904; SSR 06-3p.  However, the ALJ cannot ignore this evidence and must evaluate it.  *Id*.  Here, the ALJ followed proper procedure in evaluating Dr. Cozy's opinion.

The ALJ addressed Dr. Cozy's opinion and rejected his extreme limitations, finding them unsupported by objective findings and apparently based solely upon Plaintiff's subjective complaints.  Tr. at 19.  The ALJ further found that no treating relationship existed between Plaintiff and Dr. Cozy.  *Id*.  Substantial evidence supports the ALJ's determination as the record shows no findings by Dr. Cozy to support his limitations and the agency reviewing psychologists found much less extreme limitations upon their review of the record.  Further, the ALJ considered Plaintiff's daily living activities and reasonably determined based upon those activities and the record showing otherwise, that Plaintiff was not as restricted as Dr. Cozy found.  The ALJ thus fulfilled his duty to consider and weigh the opinion of this state psychologist.

Plaintiff also asserts that the ALJ failed to discuss the opinions of Plaintiff's family members.  ECF Dkt. #13 at 15-16.  The record includes third-party questionnaires completed by Plaintiff's father-in-law, Henderson Carroll, and her mother, Evelyn Gargatte.  Tr. at 134-142.  Both relatives completed pain questionnaires and mental/emotional questionnaires.  *Id*.  The ALJ did not mention these questionnaires in his decision.

---

[1]  Dr. Cozy must have meant that Plaintiff had not worked since 1996, as Plaintiff testified that she stopped working in1996.  Tr. at 358.

Section 416.913(d) of Title 20 of the Code of Federal Regulations provides that other sources may provide evidence to show the severity of a claimant's impairment and how it impacts a claimant's ability to work.  20 C.F.R. § 416.913(d).  "Other sources" include non-medical sources such as spouses, parents, other care-givers, siblings, relatives, friends, neighbors and clergy.  *Id.* SSR 06-3p provides that an ALJ should consider evidence from non-medical sources who have not seen a claimant in a professional capacity and may consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that support or refute the evidence."  SSR 06-3p.

However, the Sixth Circuit has held that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion."  *Kornecky,* 167 F. App'x at  507–508. The information in the third party statements relating to Plaintiff's complaints of pain for the most part mirror Plaintiff's testimony regarding her pain. Tr. at 134-137, 360-363.  The ALJ considered Plaintiff's complaints of debilitating pain and found them not entirely credible. Tr. at 16.  Moreover, the ALJ explicitly stated in his decision that he carefully considered the entire record. *Id.* at 13, 16. While he should have addressed these opinions in his decision, the ALJ's failure to directly address this evidence does not require remand. *See Cadle v. Astrue,* No. 5:10CV190, 2011 WL 3289787, at *4 (N.D. Ohio July 29, 2011)(while ALJ analysis should have directly addressed third-party questionnaires, it did not require remand), citing *Patrick v. Astrue*, No. 07–161–JBC, 2008 WL 3914921 (E.D.Ky. Aug.19, 2008) (finding that remand was not warranted due to the ALJ's failure to directly address the third party statements in his written decision).  In addition, the ALJ's failure to address the letters is not reversible error since he did provide a lengthy discussion of the lack of objective evidence supporting the debilitating impact of Plaintiff's impairments.  *Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 842, 2005 WL 1506343, at **11 (6th Cir. 2005), unpublished. (ALJ did not commit reversible error in failing to specifically mention letter from claimant's mother since he discussed the lack of objective evidence supporting the claimed physical limitations at length).

For these reasons, the Court finds that the ALJ's failure to address the letters of Plaintiff's relatives did not constitute reversible error.

### D.     <u>CREDIBILITY</u>

Plaintiff contends that the ALJ erred in his credibility findings when "he determined Carroll to be not credible to the extent her allegations were inconsistent with his RFC." ECF Dkt. #13 at 16-17. For the following reasons, the Court finds that substantial evidence supports the ALJ's credibility determination.

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Commissioner of Social Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 530 (6th Cir. 1997).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529 , SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the

relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p,

61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the

location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type,

dosage, effectiveness and side effects of any pain medication; any treatment, other than medication,

that the claimant receives or has received to relieve the pain; and the opinions and statements of the

claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the

claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should

accord great deference to that determination.  *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's

assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v.

Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

    In this case, the first prong is satisfied because the ALJ determined that Plaintiff's medically

determinable impairments could reasonably be expected to produce the alleged symptoms.  Tr. at

16.  The ALJ's finding regarding the second prong is at issue.  The ALJ did not totally discredit

Plaintiff's complaints of pain and in fact specifically noted that "in light of the claimant's subjective

complaints and continued pain management treatment, the undersigned finds that a more restrictive

RFC is warranted." *Id*. at 21.  The state agency physician had opined that Plaintiff could perform

medium work, but the ALJ limited Plaintiff to sedentary work with further restrictions.  *Id*. at 15.

The ALJ also stated that "[w]hile the claimant's subjective complaints may have some merit, the

totality of the supporting medical evidence does not provide clinical correlation of her

symptomology to the degree of debility alleged with objective findings on examination." *Id*. at 21.

The ALJ reviewed the objective medical evidence of Plaintiff's physical and mental impairments

in detail, citing numerous normal findings, properly gave less weight to Dr. Namey's opinions, and

had substantial evidence to support his decision to give less weight to Dr. Halas' extreme limitation,

as discussed in the preceding sections.  *Id*. at 16-21.  The ALJ also reviewed Plaintiff's daily living

activities of caring for her children and disabled husband, performing some housework with help,

playing cards and cooking dinners.  *Id.* at 21.  He also reviewed Plaintiff's treatment for her

impairments, indicating that she took Loratab and Lyrica, as well as Trazadone to help her sleep, and

she received cortisone injections.  *Id*. at 16.

-18-

Accordingly, the ALJ provided detailed reasons for discounting Plaintiff's credibility, reviewed the appropriate factors under SSR 96-7p, and had substantial evidence to support his finding.

### E.        STEP FIVE DETERMINATION

Finally, Plaintiff asserts that substantial evidence does not support the ALJ's Step Five finding.  ECF Dkt. #13 at 18.  Plaintiff contends that defects in the transcript render it impossible to reliably review whether the ALJ's hypothetical person to the VE was complete.  *Id*.  While conceding that many of the criteria in the ALJ's hypothetical person could be reconstructed, Plaintiff notes that the ALJ's RFC included a restriction to understanding, remembering and executing only simple instructions but that restriction is not evidenced in the transcript.  *Id*.  Plaintiff also asserts that the transcript lacks evidence that the ALJ informed the VE of Plaintiff's BIF, which would eliminate one of the jobs that the VE testified the hypothetical person could perform.  *Id*.

The transcript evidences the following colloquy between the ALJ and the VE with regard to the RFC of the hypothetical person:

> Q: [ALJ]    Individual with functional capacity sedentary work as defined in the regulations.  This individual can lift no climbing, only occasional squatting, no work overhead, no exposure to extreme temperatures, either hot or cold, age, education and work experience.
>
> A:[VE]    Yes, Your Honor.  Would you like some examples?  These are sedentary, unskilled positions.  My local numbers are for the State of Ohio.  The first position is a sedentary, unskilled information clerk.  The numbers are 1,210 locally, 118,000 nationally.  Another position is a gate guard.  My numbers are 3,550 locally, 94,000 nationally.  Another position is a hand packer.  My numbers are 1,400 locally, 120,000 nationally.
>
> Q:        [INAUDIBLE]
>
> A:        The Dictionary of Occupational Titles does not address alternating between sitting and standing.  But based on my work experience as a Vocational and Rehabilitation Counselor, I have identified these jobs that alternating between sitting and standing hypothetical.
>
> Q:        All right.  Questions?

Tr. at 368.  Thereafter, Plaintiff's counsel asked the ALJ to clarify part of the hypothetical person's RFC.  The following colloquy occurs:

Q:[Plaintiff's counsel]

Your Honor, could you just clarify on the hypothetical, I got the  - - everything through no extreme temperatures and I did get the sit stand option.  Was there anything else?  Any other limits beyond the no extreme temperatures?

A: [ALJ]  There was no extreme - - no exposure to extreme temperatures, either hot or cold, no work overhead and low-stress, simple repetitive jobs tasks.

Q:[Plaintiff's counsel]

Okay.  Thank you.

*Id.* at 369.  Defendant admits that words are missing from the transcript, but those missing words did not render the final decision of the ALJ unreviewable.  ECF Dkt. #19 at 16.

The Court agrees with Defendant.  There are missing words in the ALJ's presentation of his RFC to the VE.  Tr. at 368.  However, immediately after the ALJ's RFC presentation, Plaintiff's counsel asked the ALJ to clarify the limitations and the ALJ did so, as quoted above.  There appear to be no missing words in this part of the transcript.  *See Jacob v. Astrue*, No. 1:10CV1610, 2011 WL 723059, at *8 (N.D. Ohio Jan. 27, 2011)(even though pertinent testimony from ALJ hearing was listed as inaudible, remand not warranted where overwhelming majority of hearing was transcribed, inaudible segments did not prevent ALJ from discerning the meaning of the missing portions, and did not prevent court from performing a thorough review.).  Accordingly, the Court finds that the transcript was not so lacking as to warrant remand.

Plaintiff asserts that the ALJ's RFC included a restriction in Plaintiff's understanding, remembering and executing only simple instructions, but the transcript does not show that this restriction was presented to the VE.  ECF Dkt. #13 at 18.  She is correct.  She also states that there is no indication that her BIF was presented to the VE by the ALJ.  *Id.*; ECF Dkt. #21 at 10.  This also appears correct.

However, the ALJ's RFC to the VE included limitations to simple, repetitive, low-stress jobs, which accommodated Plaintiff's BIF and the limitations that the ALJ determined that resulted from that impairment.  Tr. at 369.  This is consistent and supported by state agency reviewing psychologist

-20-

Dr. Casterline, who found that Plaintiff had a mental RFC of understanding, remembering and carrying out simple tasks in a low-stress environment based upon the record evidence of Plaintiff's impairments, which included Dr. Halas' diagnoses of generalized anxiety disorder, depressive disorder not otherwise specified, and BIF, and Plaintiff's partially consistent statements. *Id.* State reviewing psychologist Dr. Chambly found that Plaintiff was not significantly limited in her abilities to understand, remember and execute very short and simple instructions, but limited Plaintiff's mental RFC only as to routine work where the expected pace was not rapid and changes could be explained. *Id.* at 178. She also considered Dr. Halas' June 13, 2005 evaluation and partially consistent statements made by Plaintiff in determining this RFC. *Id.*

Plaintiff raises for the first time in her reply brief the assertion that other limitations are missing from the ALJ's RFC and the hypothetical person that the ALJ presented to the VE, such as limitations concerning Plaintiff's COPD, depression, and anxiety. ECF Dkt. #21 at 10. "[I]t is well-established that a reply brief is not the proper place to raise new arguments." *Hamilton v. Astrue*, 2010 WL 1032646, at *6 (N.D. Ohio Mar. 17, 2010), citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008); *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 n. 19 (6th Cir.2005); *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001).

Nevertheless, even considering these assertions, the ALJ had substantial evidence to support his RFC findings which did not include limitations as to Plaintiff's COPD. It is the ALJ's ultimate duty to determine a claimant's RFC. 20 C.F.R. § 416.946(c); *Webb v. Commissioner of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) and an ALJ is required to incorporate only those limitations into his RFC or hypothetical person to the VE that he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). While the ALJ found Plaintiff's COPD to be a severe impairment at Step Two, he noted testing which revealed only mild pulmonary obstruction, Dr. Bhaiji's examination findings of no evidence of wheezing and clear auscultation of the lungs, and an August 2007 spirometry test which showed normal spirometry testing after Plaintiff stopped smoking. Tr. at 20, 21, citing Tr. at 241, 287, 289, 291. Moreover, Dr. Namey, Plaintiff's treating physician, provided no limitations with regard to Plaintiff's COPD. *Id.* at 341. Nor did Dr. Bhaiji,

-21-

the state agency examining physician. *Id*. at 203.

Moreover, the ALJ accommodated Plaintiff's depression, anxiety and ability to follow simple instructions, to the extent he found them restrictive, by limiting her to simple, routine, repetitive tasks in low-stress environments. Tr. at 15-16.

For these reasons, the Court finds no merit to Plaintiff's assertion.

**VI.**     **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.


IT IS SO ORDERED.


DATE: August 18, 2011                     */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE